UNITED STATES DISTICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

VERONICA SCHULTZ

       Plaintiff,

   - against -

THE NEW YORK CITY POLICE DEPARTMENT,
THE CITY OF NEW YORK, POLICE COMMISSIONER
RAYMOND W. KELLY and JAMES BRIONES,

       Defendants.
-----------------------------------------------------------------------X:

**AMENDED COMPLAINT**

Index No.:10 cv 2727

   Plaintiff Veronica Schultz (hereinafter referred to as "Plaintiff"), through her attorneys,

the Law Offices of Jeffrey L. Goldberg P.C. respectfully alleges:

<u>**JURISDICTION**</u>

   1. This is an action for damage brought pursuant to Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e q 42 U.S.C. § 1983; and the United States Constitution,

Fourteenth Amendment.

   2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 & 1343, 42

U.S.C. § 1981, 198k, 1983, 2000e <u>et</u>. <u>seq</u>. Title VII, and this Court's Supplemental Jurisdiction

pursuant to 28 U.S.C. § 1367.

<u>**VENUE**</u>

   3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391

<u>**CONDITIONS PRECEDENT TO SUIT**</u>

   4. Plaintiff has complied with all the prerequisites to an action under Title VII:

   (a) On or about August 14,2009, Plaintiff filed a verified charge of discrimination on the

basis of sex, hostile work environment and retaliation, under Title VII, with the United States Equal Employment Opportunity Commission (hereinafter the "EEOC").

(b) The EEOC, through the United States Department of Justice, issued a requested "NOTICE OF RIGHT TO SUE" to Plaintiff which was received by Plaintiff on May 7, 2009.

(c) Plaintiff commences this action within ninety (90) days of the receipt of the Notice of Right to Sue.

(d) All conditions precedent to the institution of this action have been fulfilled.

## PARTIES

5. At all times herein after mentioned, Plaintiff was and still is a citizen of the State of New York, residing in Suffolk County, Plaintiff was and still is a black female, and Plaintiff has been employed since 2003 by defendants, The New York City Police Department (hereinafter the "NYPD"), New York City (hereinafter "NYC") and Police Commissioner Raymond W. Kelly (hereinafter the "Commissioner') in the capacity of police officer.

6. Upon information and belief, at all times hereinafter mentioned, defendant NYPD, was and still is an organization performing police functions for defendant, NYC, was and still is acting through its administrators, agents, directors, employees, officers, servants and/or trustees, organized under the laws of New York State, receiving and operating with public funds, and did and still does have its principal place of business at One Police Plaza, New York, New York.

7. Upon information and belief, at all -times hereinafter mentioned, defendant, NYC, was and still is a municipality acting through its administrators, agents, directors, employees, officers, servants and/or trustees organized under the laws of New York State, receiving and operating with public funds, and having its principal place of business in New York, New York.

8. Upon information and belief, at all times hereinafter mentioned, defendant,

Commissioner, resided and still resides in New York State -and was and still is the Commissioner of NYPD.

9. Upon information and belief, at all times hereinafter mentioned, defendant, James Briones (hereinafter "Briones"), resided and still resides in New York State, was and still employed by NYC), NYC and Commissioner in the capacity of police officer, was and still is an agent of NYPD, NYC and Commissioner, did and still does hold the rank of Sergeant within NYPD, and was Plaintiff's immediate supervisor from in or about January, 2008 until in or about May, 2009.

10. Upon information and belief, at all times hereinafter mentioned, defendants, NYPD, NYC and Commissioner were and are responsible for administering Plaintiff's wages, and were and are responsible for the acts of Briones.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

11. In 2003, Plaintiff was assigned to NYPD's 103rd Precinct, which is located in Queens, New York.

12. In 2005, Plaintiff was assigned to NYPD's lop' Precinct, which is located in Queens, New York.

13. In 2006, Plaintiff was reassigned to the 103rd Precinct.

14. In or about April 2007, Plaintiff, at her request, was assigned to be a Youth Officer within the School Unit of the 1 03Ed Precinct (hereinafter the "School Unit").

15. Plaintiffs assignment to the School Unit was the realization of her longstanding professional goal, which goal was to use her position as a polite officer to work with youths and to work closely with the local community.

16. As a Youth Officer within the School Unit, Plaintiff worked out of the Youth Office,

3

which is located at the 103rd Precincts headquarters at 168-02 P.O. Edward Byrne Avenue, Queens, New York.

17. As a Youth Officer within the School Unit, Plaintiff's duties and responsibilities included:

(i) helping NYPD connect with the local community by working closely with local civilian leadership; (ii) implementing, directing and managing a new NYPD Youth Council Program (hereinafter the "Youth Program"), which involved the recruitment of local youths, fund-raising, and organizing of NYPD-sponsored community events, including but not limited to talent shows, picnics, field trips, sports activities and a mentoring program; (iii) processing of juvenile arrests; and (iv) investigating crimes committed by or against youths in the local community.

18. On or about June 28, 2007, Briones was assigned to the 103rd Precinct.

19. On or about January 28, 2008, Briones was assigned to the School Unit with the title of School Sergeant, in which capacity he was charged with the task of directing, managing and supervising the School Unit and all School Unit personnel, including Plaintiff and all other Youth Officers.

20. Beginning in or about January, 2008, and continuing until in or about May, 2009, Briones engaged ii a malicious campaign and enterprise targeted against Plaintiff to degrade, demean, discriminate against, harass, humiliate and terrorize Plaintiff based upon her sex.

21. Beginning in or about January, 2008, and continuing to date, Briones engaged in a malicious campaign and enterprise to routinely subject Plaintiff to a sexually hostile work environment.

22. From in or about January, 2008, and continuing until in or about May, 2009, Briones's persistent discrimination against and harassment of Plaintiff created and fostered a

hostile work environment within the 1 03" Precinct generally, and within the School Unit specifically, a toxic environment in which the Plaintiff was caused to be held in low esteem and with disdain by co-workers and supervisors.

23. Beginning in or about October, 2008, and continuing to date, Briones and other agents, employees and for servants of NYPD) engaged in a malicious campaign to retaliate against Plaintiff and to subject Plaintiff to a sexually hostile work environment for complaining about Briones's degrading, demeaning, discriminating, harassing, humiliating and terrorizing behavior, specifically for filing a complaint of employment discrimination against Briones with the NYPD Office of Equal Employment Opportunity as alleged in paragraph numbered 82 below.

24. Beginning in or about March, 2008, and continuing to date, Briones engaged in a malicious campaign and enterprise to render Plaintiff's ability to perform her daily job duties and responsibilities unreasonably difficult and to interfere with Plaintiffs ability to direct and manage the Youth Program, all in retaliation for Plaintiff's refusal to submit to Briones's sexually hostile advances and eventually in retaliation for Plaintiff's filing of a complaint of employment discrimination against Briones with the NYPD Office of Equal Employment Opportunity as alleged in paragraph numbered 82 below.

25. From in or-about January, 2008, and continuing to date, various agents, employees and/or servants of NYPD assisted in, tolerated and/or ignored Briones's malicious. campaign and enterprise targeted against Plaintiff to degrade, demean, discriminate against., harass, - humiliate and terrorize Plaintiff based upon her sex, and further assisted in, tolerated and/or ignored Briones's malicious campaign and enterprise to render Plaintiffs ability to perform her daily job duties and responsibilities unreasonably difficult and to interfere with Plaintiff's ability to direct

and manage the Youth Program.

26. Defendants, NYPD, NYC and Commissioner have committed all acts alleged herein through their administrators, agents, directors, employees, officers, servants and/or trustees, and acting through their administrators agents, directors, employees, officers, servants and/or trustees were at all relevant-times Plaintiffs employers.

27. On numerous occasions beginning in or about January, 2008, and continuing until in or about October, 2008, Briones verbally accosted Plaintiff while Briones and Plaintiff were on duty at the 103rd Precinct headquarters and at other locations by referring to Plaintiff using abusive, vulgar, - obscene and inappropriate language, including but not limited to constantly referring to Plaintiff as "boo," "my boo," "ma," "my girl" and "sexy." - This verbal harassment frequently occurred in the presence of one or more of Plaintiff's co-workers and continued despite Plaintiffs informing Briones that said verbal harassment was unwelcome.

28. On numerous occasions beginning in or about January, 2008, and continuing until in or about October, 2008, Briones verbally accosted Plaintiff while Briones and Plaintiff were on duty at the 103rd Precinct headquarters and at other locations by making abusive, vulgar, obscene and inappropriate comments to Plaintiff about parts of Plaintiff's body, including but not limited to telling Plaintiff that she had "nice teeth", that she had "kissable lips," and that she had a "nice ass." This verbal harassment (frequently occurred in the presence of one or more of Plaintiff's co-workers and continued despite Plaintiff's informing Briones that said verbal harassment was unwelcome.

29. On numerous occasions beginning in or about February, 2008, and continuing until in or about March, 2008, Briones, after seeing photograph of Plaintiff on her desk in the Youth Office, asked Plaintiff "Can I have that picture of you? You look hot!" Plaintiff repeatedly

declined to give the picture to Briones.

30. In or about March, 2008, Plaintiff noticed that the photograph on her desk in the Youth Office had been removed from her desk and Briones was no longer asking Plaintiff for the photograph.

31. Some time in or about February, 2008, "Briones greeted Plaintiff as she reported for duty at the 103rd Precinct headquarters by stating to Plaintiff: "What's up? Where's my hug and kiss? I want to be greeted with a hug and kiss!" This verbal harassment occurred in the presence of one or more of Plaintiff's co-workers. .

32. Some time in or about February, 2008, at the l03 Precinct headquarters, Briones observed that Plaintiff was wearing tight jeans with a zipper in the rear and stated to Plaintiff: "I sure would like to be that zipper right now." This verbal harassment occurred in the presence of one or more of Plaintiffs co-workers.

33. On or about February 28, 2008, at the 103rd Precinct headquarters, Briones presented Plaintiff with a birthday cake and asked Plaintiff to go on a date with Briones. Plaintiff declined Briones's offer. Briones then asked Plaintiff bow old she was, to which Plaintiff replied "thirty-two, but that is a rude question to ask." Briones responded by telling Plaintiff "[don't believe that is your real age."

34. Some time in or about February, 2008, Briones explicitly gave Plaintiff permission to use an NYPD van once per week in order to transport youths involved in the Youth Program.

35. On or about March 6, 2008, at Briones's instigation, Plaintiff received a CD (command discipline) for alleged unauthorized use of an NYPD van in connection with the once-pr-week transportation of youths involved in the Youth Program as Briones had previously authorized. At all relevant times, Plaintiff had used NYPD vans only as authorized by-Briones,

7

who nonetheless sought to impose discipline against Plaintiff even though she had acted pursuant to Briones's authorization.

36. On or about March 25, 2008; Briones instructed Plaintiff to cancel a Youth Program meeting and to instead process thirty-two (32) arrests in one thy, including the processing of arrests that were not Plaintiffs responsibility. Prior to on or about March 25, 2008, Plaintiff had never been asked to process more than two (2) arrests in one thy.

37. On or about April 2, 2008, Briones informed Plaintiff that he wanted Plaintiff to triple her number of arrests, a request which Briones did not make of any other police officers under Briones's command.

38. On or about April 2, 2008, Briones stated lo Plaintiff: "I need you to come in tomorrow morning at 7 a.m. to get my arrest reports done," at which time Plaintiff informed Briones that another police officer was already assigned to handle the arrest reports. Briones then told Plaintiff that she did not have to come in at 7 a.m. to work on arrest reports.

39. On or about April 3, 2008, at the l03" Precinct headquarters, Briones stated to Plaintiff "The captain is pissed off because the arrest reports are not finished. You have to do the reports right away."

40. On or about April 3, 2008, at the 103rd Precinct headquarters, Briones assigned Plaintiff to a foot post, or foot-patrol, which meant that Plaintiff had to patrol the 103rd Precinct's territory on foot an assignment that Plaintiff had never before received. Upon information and belief, a foot post assignment is considered to be a form of punishment. -

41. On or about April 8, 2008, at the 103rd Precinct headquarters, Plaintiff reported for duty and discovered that her desk in the Youth Office was covered in garbage, including newspapers, used napkins, candy wrappers and other officers' paperwork.

42. On or about May 6, 2008; Briones assigned Plaintiff to serve as Briones's driver-for that day, which involved travel to various locations within the 103rd Precinct's territory throughout the day. While Plaintiff drove Briones, he repeatedly verbally accosted Plaintiff by making abusive, vulgar, obscene and inappropriate comments to Plaintiff, including but not limited to telling Plaintiff: "you look good today," "your lips look luscious," "your lips look kissable;" and "lips and teeth are what attracts me to a woman," Additionally, while Plaintiff drove Briones, he repeatedly attempted to engage Plaintiff in inappropriate topics of conversation, including repeatedly questioning Plaintiff about her likes and dislikes.

43. In or about May, 2007, Plaintiff participated in an annual NYPD-sponsored talent show at York College. During Plaintiffs dance performance, Plaintiff's pants accidentally fell down. The incident was captured on video.

44. On numerous occasions beginning in or about September, 2007, and continuing until in or about May, 2008, Briones verbally accosted Plaintiff by demanding that Plaintiff provide Briones with a copy of the video of the May 2007 talent show incident. Plaintiff repeatedly declined to give a copy of the video to Briones.

45. On or about May 14, 2008, Plaintiff observed Briones in an office at the 103" Precinct headquarters holding a DVD and stating loudly to several other police officers "we gotta watch this DVD." Plaintiff observed Briones and several other police officers watching the DVD, which contained footage of Plaintiff's pants falling down at the May 2007 NYPD-sponsored talent show. Plaintiff further observed that Briones had paused the DVD at the point which showed Plaintiffs pants falling down. Plaintiff attempted to shut off the DVI), but Police Officer Chris Lopez prevented Plaintiff from doing so. As Plaintiff attempted to shut off the DVD, Briones laughed at Plaintiff and called out to several other police officers: "yo, you gotta see

this" and "come check this out" Immediately after Plaintiff attempted to shut off the talent show DVD, Plaintiff, crying, went into the Youth Office to escape further degradation, embarrassment and humiliation. Briones followed Plaintiff into the Youth Office, at which time Briones stated to Plaintiff: "Why are you so upset? You have a nice ass. You know you have a nice ass. You know boys will be boys. It's no big deal." Plaintiff attempted to explain to Briones that Plaintiff felt degraded, embarrassed and humiliated, but Briones responded: "Don't be. You have a nice ass and you are very sexy." This verbal harassment occurred in the presence of one or more of Plaintiff's co-workers.

46. On or about May 15, 2008, Briones assigned Plaintiff to another foot post, this time at and around the truancy center at Jamaica High School in Queens.

47. On or about May 28, 2008, Plaintiff had planned to take several members of the Youth Program to a police athletic sporting event using an NYPD van. Plaintiff obtained Briones's permission to use a van prior to on or about May 28, 2008. When Plaintiff went to the front desk at the toy" Precinct in order to obtain keys to the van and to inform Briones that Plaintiff was taking a van, Briones denied Plaintiff use of a van. Briones informed Plaintiff that he would only be permitted to use a regular police vehicle (an RMP, or radio motor patrol vehicle) instead of a van and gave Plaintiff the keys to an RMP. When Plaintiff explained to Briones that she needed a van because she had approximately ten (10) youths to transport, Briones stated to Plaintiff: "When a Sergeant tells you to take an RMP, you take it.".

48. Some time in or about May, 2008, at the 103rd Precinct headquarters, Plaintiff observed Briones holding a magazine with a picture of a female wearing a black thong, at which time Briones verbally accosted Plaintiff by pointing and laughing at Plaintiff and asking Plaintif1 "Does that look. familiar? (referring to the picture of the female wearing the black thing in the

magazine).' At that time, Briones also stated to Plaintiff "I'll be in the talent show this year, but only if I can dance with you, I want to rub up on it too. I heard how y'all dance." Briones then turned to another police officer and, in Plaintiff's presence, stated to the other police officer: "get me a copy of that video," in reference to the video of the 2008 NYPD-sponsored talent show.

49. On numerous occasions beginning in or about May, 2008, and continuing until in or about October, 2008, Briones verbally accosted Plaintiff by making vulgar, obscene and inappropriate comments to Plaintiff about the talent show DVD, including but not limited to: "Put me in the show," "I want to be in your show so I can rub up on you," and "You look hot and sexy."

50. On numerous occasions beginning in or about May, 2008, and continuing until hi or about October, 2008, Briones verbally accosted Plaintiff by repeatedly demanding that Plaintiff provide Briones with photographs of Plaintiff in her show costumes for the 2007 and 2008 NYPD-sponsored talent shows. Plaintiff repeatedly declined to give the requested photographs to Briones.

51. Some time in or about October, 2008, at the 1 03 Precinct headquarters, Briones approached Plaintiff, placed his hand on Plaintiff's shoulder and said to Plaintiff: "I could make this all go away."

52. On or about June 3, 2008, Plaintiff was at NYPD headquarters at One Police Plaza for an awards ceremony in connection with the "Police Commissioner for a Day" Essay Contest as chaperone for the 103rd Precinct's youth contestant, as part of the Youth Program, of which activity Briones was aware. In the middle of the ceremony, Plaintiff received a call from Briones that Plaintiff needed to immediately return the van she had used to drive to the ceremony, compelling Plaintiff to leave the ceremony before the 103rd Precinct's youth contestant could be

11

honored.

53. On or about June 5, 2008, at the I03rd Precinct headquarters; Briones granted Plaintiff permission to use a police van for a Youth Program volleyball game, but before Plaintiff could leave for the game, Briones withdrew his permission and allowed another officer to use the van.

54. On or about June 10, 2008, at the 103rd Precinct headquarters, Briones falsely accused members of the Youth Program of breaking a massage pad that he had installed on his chair in his office and became enraged at Plaintiff and members of the Youth Program.

55. On or about June 16, 2008, at the 1 03M Precinct headquarters, Plaintiff noticed that posters for the movie "Ratatouille" that Plaintiff and members of the Youth Program had placed on the walls at the 103rd Precinct had been covered over with newspapers, cartoons and obscene drawings.

56. On or about June 18, 2008, Plaintiff was the passenger in an RMP with another police officer when they received a radio call from Briones telling them to "stay where you are." When Briones arrived, he told Plaintiff to drive the RMP back to the 103rd Precinct headquarters and deliver the keys to the RMP to Lieutenant Carlo. Plaintiff immediately drove the RMP to the lO3rd Precinct headquarters as instructed by Briones, only to find that Lieutenant Carlo had long since left for the day. The next day, Lieutenant Carlo blamed Plaintiff for not getting the RMP to bun on time.

57. On or about June 19, 2008, and on many other occasions, Briones assigned Plaintiff to handle the arrest of a youth after other officers had conducted an investigation into the matter, even though it was common practice for officers to handle only those arrests stemming from cases that the particular officer investigated.

58. On or about July 17, 2008 Briones called Plaintiff to a meeting at the 103" Precinct headquarters at 7:20p.m., approximately three hours after Plaintiffs tour of duty had ended for that day. At the meeting, Briones informed Plaintiff that she was receiving too much overtime pay and that she should not incur any additional overtime, and further informed Plaintiff that she would have to cancel all Youth Program after-school activities except for Youth Council meetings on Tuesdays. Upon information and belief, no other officers within the School Unit were told by Briones that they were receiving too much overtime pay.

59. On or about July 18, 2008, Plaintiff was at IS 8, a public school within the 103rd Precinct's territory, at which time she received a call from the 103 Precinct ordering Plaintiff to return the van she was using because "Sergeant Saunders needs the new van to be comfortable."

60. On or about July 24, 2008, at the 1 03td Precinct headquarters, Lieutenant Konrad Seegers angrily questioned Plaintiff about her Youth Program, asking Plaintiff in an angry and menacing tone: "What do you do with local youths?" and "Why is there a Youth Program?," to which Plaintiff responded: "To bridge the gap between police and the local community." Lieutenant Seegers responded: "Oh, so you're just a babysitter?" -

61. On or about July 24, 2008, Lieutenant Seegers denied Plaintiffs request for use of a van to transport thirty (30) local youths to a museum field trip.

62. On or about August 12, 2008, at the 103rd Precinct headquarters, Sergeant Loida Lamondola denied Plaintiff the use of a van for the Youth Program. Plaintiff was instructed to use the subway to transport approximately thirty (30) youths.

63. On or about August 19, 2008, Briones denied Plaintiff the use of a van for a Youth Program field trip.

64. On or about August 20, 2008, Briones canceled a Youth Program summer camp event

and sent all participating youths home, causing Plaintiff's campers to forfeit a softball game scheduled for that evening.

65. On or about August 21, 2008, Plaintiff and Police Officer Yves Mandat were assigned a van for the Youth Program summer camp event for that morning, which was a trip to a bakery in preparation for a bake sale. While Plaintiff and Officer Mandat were at the bakery, Briones called - them and ordered them to "bring the van back to the station house forthwith." As a result Plaintiffs campers were stranded at the bakery until auxiliary police officers who happened to be in the area came to help.

66. On or about August 26, 2008, Briones prevented Plaintiff from using a van that had been promised to Plaintiff in order to transport Youth Program members to a softball game, causing Plaintiff and her youths to arrive two hours late to the game.

67. On or about September 9, 2008, Briones assigned Plaintiff to election duty, which involves foot post duties at polling centers. Briones informed Plaintiff that be would find another police officer to cover Plaintiff's normal Youth Program responsibilities scheduled for that day. Thereafter, Briones failed to find another police officer to cover for Plaintiff, compelling Plaintiff had to ask another officer who was off-duty to cover for Plaintiff.

68. On or about September 23; 2008, Plaintiff needed a police vehicle for a court appearance, but Briones refused to provide Plaintiff with a vehicle.

69. On or about September 30,2008, Briones informed Plaintiff that her commanding officer; Inspector Michael Blake (hereinafter referred to as "Inspector Blake") was supposedly not happy with Plaintiff's job performance and that Briones had started interviewing for Plaintiffs position in the School Unit because, as Briones stated to Plaintiff: "other cops can do better than you."

14

70. On or about October 2, 2008, Briones assigned Plaintiff to a hospital post, where she relieved a first-year officer, an assignment that as outside the scope of Plaintiff's duties as a Youth Officer.

71. On or about October 3, 2008, Briones assigned to a foot post at a local public school. When Plaintiff arrived at the foot post, a school safety supervisor told Plaintiff that Briones had informed the safety officer that Briones was attempting to reassign Plaintiff to that post on a permanent basis.

72. On or about October 7, 2008, at the 103rd Precinct headquarters, Briones told Plaintiff that Inspector Blake Was supposedly of the belief that Plaintiff had too many Youth Program events and that Plaintiff would have to downsize the Youth Program.

73. Upon information and belief, as of on or about October 7, 2008, Inspector Blake had frequently praised Plaintiff's work in the School Unit.

74. Upon information and belief, on or about October 7, 2008, at the 103rd Precinct headquarters, Briones held a meeting with Lieutenant Keith King and two members of the School Unit, Police Officers Dion Dixon (hereinafter referred to as "Officer Dixon") and Christine Carinella (hereinafter referred to as "Office Carinella"), in which Briones told them not to trust Plaintiff and that Briones would have Plaintiff removed from the School Unit. Upon information and belief, Briones assured Officer Dixon and Officer Carinella that "you are my girls and you're not going anywhere."

75. On or about October 7 2008, at the 103rd Precinct headquarters, Briones threatened Plaintiff that he would show Plaintiffs memo book entries to Officer Dixon and Officer Carinella. Upon information and belief, it is standard practice for police officers to not have to share the contents of their memo books with other police officers. Upon information and belief,

Briones did not make similar threats to any other member of the School Unit.

76. Upon information and belief, beginning in or about March, 2008, and continuing until in or about May, 2009, Briones frequently spoke about and/or referred to Plaintiff in a demeaning and derogatory manner to Officer Dixon, Officer Carinella and other members of the School Unit, both in Plaintiffs presence and behind Plaintiff's back.

77. On or about October 8, 2008, Briones canceled one of Plaintiff's Youth Program events and assigned Plaintiff to a foot post.

78. On or about October 8, 2008, Briones dismissed two members of the Youth Program without Plaintiff's consent and without explanation.

79. On or about October 9, 2008, Briones informed Plaintiff that Blake was upset about the cancellation of Plaintiff's Youth Program event scheduled for October 8, 2008. Plaintiff reminded Briones that he had cancelled that event.

80. On or about October 14, 2008, Briones dismissed another member of the Youth Program without Plaintiff's consent and without explanation.

81. On or about October 15, 2008, Briones used an NYPD van that he had promised to Plaintiff for that evening so that Plaintiff could transport youths to a "Cops and Kids" evening softball game. Briones did not return the van on time and p if was compelled to find other means of transportation for the youths. When Plaintiff arrived at the softball game, Briones called Plaintiff and informed her that he wanted her to return immediately to the 103rd Precinct headquarters.

82. On or about October 16, 2008, Plaintiff filed a complaint of employment discrimination against Briones with the NYPD Office of Equal Employment Opportunity.

83. By letter dated May 29, 2009, the NYPD Office of Equal Employment Opportunity

informed Plaintiff that "no case of employment discrimination could be discerned under Title VII of the Civil Rights Act of 1964, or applicable state or local laws."

84. On or about October 30, 2008, at the 103rd Precinct headquarters, Plaintiff was bent over in front of a file cabinet in the Youth Office when Briones approached Plaintiff from behind and rubbed his penis against Plaintiff's buttocks.

85. On or about October 30, 2008, at the 103rd Precinct headquarters, Briones stated to Plaintiff: "I'm not trying to turn everyone against you but if you're willing to work with me then I'm willing to work with you. I hate to see the Unit divided like this. No one likes you; I'm the only friend you've got. Remember that."

86. On or about November 5, 2008, at the 103rd Precinct headquarters, Briones, while watching a video of the 2008 NYPD-sponsored talent show, stated to Plaintiff: "I like your act. You girls are very sexy. Next year I'm going to be in it. I'll dance with you." This verbal harassment occurred in the presence of one or more of Plaintiffs co-workers.

87. On or about November 6, 2008, Briones assigned Plaintiff to a hospital post to relieve a first-year police officer, an assignment that was outside the scope of Plaintiffs duties as a Youth Officer.

88. On or about November 11, 2008, Briones ordered Plaintiff and her Youth Program members to clean up the Youth Office because Briones blamed Plaintiff and her youths for making a mess in the Youth Office that had in fact been made by other individuals.

89. On or about November 27, 2008, which was Thanksgiving Day and the day of a scheduled Youth Program event (going to church to feed the homeless); Sergeant Schlanger assigned Plaintiff to the civilian complaint office at a time when Plaintiff was supposed to be preparing her Youth Program members for the charity event at the church.

90. On or about December 4 2008, Briones instructed Plaintiff to move a locker from the basement to the fourth floor at the 103rd Precinct headquarters because Officer Dixon had complained that Plaintiff had an extra locker, when in fact the extra locker was being used to store clothing for the Youth Program and such use had been approved by Blake.

91. On or about December 6, 2008, Plaintiff was at a Youth Program event (a Christmas tree lighting community service) with members of the Youth Program when Briones called Plaintiff and told her she needed to return a van to the 103rd Precinct immediately. As a result, the Youth Program event was cut short.

92. On or about December 30, 2008, Officer Dixon threatened to throw Plaintiff's Youth Program files on the floor after Officer Dixon became angry that Plaintiff's files were in a particular file cabinet.

93. On or about December 31, 2008, Briones assigned Plaintiff to an RMP patrol with Police Officer Clifford Riguard after informing Plaintiff that her assignment for the day would be to organize her Youth Program files and records. When Plaintiff returned from RMP patrol later that morning, she found her Youth Program files and records thrown into different draw in the file cabinet in the Youth Office, out of order and scattered. Briones informed Plaintiff that he had instructed Officer Carinella and Officer Dixon to move the files.

94. On or about January 1, 2009, Briones assigned Plaintiff to guard a hospitalized prisoner, an assignment that was outside the scope of Plaintiff's duties as a Youth Officer.

95. On or about January 6, 2009, Plaintiff arrived at the 103 Precinct headquarters and discovered that the file cabinet thaw in the Youth Office containing her Youth Program, files and records had been dumped into another file cabinet. The files were strewn about the file cabinet in no particular order and some files were missing.

96. On or about January 9, 2009; Briones requested that Plaintiff provide Briones with financial documentation relating to funds used by the Youth Program. Plaintiff provided Briones with receipts and other expense documents relating to finds used by the Youth Program. At that time, Briones told Plaintiff that she would be fired if she did not cooperate with Briones.

97. On or about January 9, 2009, at the 103rd Precinct headquarters, Briones stated to Plaintiff: "You're not a team player. It's important that I get to know you. I want you to call a meeting with the School Unit to clear the aft. Supposedly, they, are upset with you for not eating any of Lopez's birthday cake (referring to police officer Chris Lopez); There's only so much I can do. You need to do your past now. Don't you think it's important that we get to know you? I don't know how you interact outside of work. You need to be a team player. It's a new year now Don't you want the new year to be better for us and everyone concerned? If you want to play the game, I'll teach you how to play the game."

98. On or about January 10, 2009, Briones canceled an internship that Plaintiff had been providing to a member of the Youth Program.

99. On or about January 22, 2009, Briones informed Plaintiff that she was no longer authorized to schedule guest speakers for the Youth Program without Briones's permission.

100. On or about February 26, 2009, at the 103rd Precinct headquarters, Briones stated to Plaintiff: "If I wasn't hobbling on a cane, I'd take you out, for your birthday."

101. On or about March 4, 2009, Briones assigned Plaintiff to correct arrest reports that had been incorrectly prepared by Officer Carinella.

102. On or about March 4, 2009, without explanation, Briones canceled a meeting that Plaintiff had scheduled with a representative of the Federal Aviation Administration during which the representative was going to offer to donate a sixty-inch television to the Youth

Program.

103. On or about March 5, 2009, Briones assigned Plaintiff to a foot post at the truancy center at Jamaica High School.

104. On or about March 11, 2009, Briones informed Plaintiff that she would no longer be reimbursed for her nighttime work with the Youth Program even though Plaintiff was entitled to such reimbursements.

105. On or about March 11, 2009, Lieutenant Christopher Garciaupheld Briones's decision to no longer reimburse Plaintiff for nighttime work.

106. On or about March 18, 2009, at the 103rd Precinct headquarters, Briones stated to Plaintiff "You're not being team player. Nobody wants to work with you."

107. On or about March 19, 2009, at the 103rd Precinct headquarters, Briones saw Plaintiff in a hallway and stated to Plaintiff "It's just me and you." As Plaintiff attempted to open the door to an office, Briones approached Plaintiff from behind, grabbed Plaintiffs shoulders and rubbed up against Plaintiff's buttocks with his penis.

108. On or about March 19,2009, at the 103rd Precinct headquarters, Briones and Plaintiff were discussing the manner in which the juvenile room (the room in which juvenile prisoners are processed) was being decorated and remodeled, at which time Plaintiff asked Briones: "Is that going to be my new office?" Briones placed his hand on Plaintiff's right shoulder and told Plaintiff: "It could be."

109. On or about March 30, 2009, Sergeant Penny Walthal called Plaintiff and informed her that members of the Youth Program were going to be excluded from the upcoming NYPD-sponsored talent show.

110. Some time in March, 2009, at the 103rd Precinct, Briones stated to Plaintiff "I want

20

to see your workout body because you've got it going on. I'm going to make it mandatory for my elite school squad to work out, but you don't have to lift weights, you can put on your little workout outfit and I can watch those tidies bounce." Briones then laughed at Plaintiff', took off his uniform top, stripped down to his undershirt iii front of Plaintiff, and said to Plaintiff: "Go ahead and feel it, I bet you never felt guns like this before (referring to his arms)." Plaintiff declined to touch Briones in any manner.

111. On or about April 1, 2009, at the 103rd Precinct headquarters, Briones stated to Plaintiff: "I gotta give it to you, you're very strong. Most people would have given up a long time ago. I know you like what you're doing but don't you have to think to yourself that you spend a lot of time with these kids (referring to the children Plaintiff worked with in the School Unit)? Don't you feel like you're neglecting time with your own family? I couldn't come in on my own time all the time. It's gotta be overwhelming for you. Ill try and get the other guys to help you out because I don't want you taking on so much."

112. On or about April 3, 2009, Briones assigned Plaintiff to a foot post as punishment for allegedly going over Briones's head to complain about Briones's cancellation of the Youth Program internship on January 10, 2009, referred to in paragraph 95 herein.

113. On or about April 8, 2009, Briones denied Plaintiff use of a van for transporting several members of the Youth Program to the Empire State Building.

114. Oh or about April 8, 2009, April 9, 2009, and April 10, 2009, while Plaintiff was on vacation, she received several text messages from Briones informing Plaintiff that she would be reassigned from chaperoning members of the Youth Program to a week long camp program run by the Federal Aviation Administration (in which youths learn about aviation) to a foot post.

115. Some time in April, 2009, at the 103rd Precinct headquarters, Briones told Plaintiff

"I could make things easier for you if you are willing to cooperate."

116. Some time in or about April, 2009, Plaintiff was standing in front of her desk in the Youth Office when Briones brushed against Plaintiff's buttocks with his penis.

117. On or about April 21, 2009, Plaintiff reported for duty at the 103rd Precinct headquarters, at which time Briones instructed Plaintiff to conduct a search of a female prisoner, even though Plaintiff had just walked into the Precinct and was wearing her civilian clothes. At that time, other female police officers were available to conduct the search. Plaintiff asked Briones if she could change into her police uniform before conducting the search, but Briones denied that request.

118. On or about April 29, 2009, Lieutenant Christopher Garcia informed Plaintiff that she was being removed from the School Unit and going back to patrol, effective the following day.

119. On or about April 30, 2009, Plaintiff was dismissed from the School Unit.

120. Upon information and belief, Plaintiff was dismissed from the School Unit because she filed a complaint of employment discrimination against Briones with the NYPD Office of Equal Employment Opportunity as alleged in paragraph numbered 82 above, and also because Plaintiff displeased Briones by refusing to submit to his inappropriate and sexually hostile advances as alleged above.

121. Upon information and belief, Plaintiff suffered a loss of salary and benefits because of her dismissal from the School Unit.

122. Plaintiff suffered a loss of a unique career opportunity because of her dismissal from the School Unit.

123. On or about May 1, 2009, in the Youth Office, Officer Dixon accused a member of

the Youth Program of attempting to trip Officer Dixon, who began to yell at the Youth Program member as well as another youth who was in the office at the time, which compelled Plaintiff to escort the two youths out of the Youth Office. Immediately after that incident, Briones and Lieutenant Keith King instructed Plaintiff not to return to the Youth Office for the rest of the day and told Plaintiff that she was to finish clearing out her belongings from the Youth Office by the next day.

124. Upon information and belief, on or about May 1, 2009, Briones had a party in the Youth Office to celebrate Plaintiff's removal from the School Unit, during which party Briones told stories to Plaintiff's, co-workers about Plaintiff crying as a result of being removed from the School Unit and about the fact that Plaintiff was heartbroken about being removed from the School-Unit.

125. On or about May 1, 2009, Briones denied Plaintiff's request to say goodbye to members of the School Unit.

126. On or about May 11; 2009, Plaintiff and Briones were on stage at a rehearsal for the 2009 NYPD-sponsored talent show, at which time Briones brushed up against Plaintiff from behind with considerable force and stated to Plaintiff: "Excuse me, I'm just trying-to get to the other side.?'

127. Since on or about April 30, 2009, Plaintiff has been assigned to patrol duties in the 103rd Precinct.

128. From on or about April 30, 2009 to date until the present time, Plaintiff has repeatedly been assigned to duties and tasks that are normally assigned to police officers with less seniority and less service time than the Plaintiff.

23

129. From approximately August 14, 2009 to date plaintiff ahs been the subject of retaliation for engaging in the protected activities of filing charges and a complaint about sex discrimination and hostile work environment, including but not limited to: receiving unwarranted command disciplines, vandalism of her vehicle while parked at work and expressed intentions by co-workers and supervisors to retaliate against plaintiff if and when she is transferred to a new assignment by calling the new command to make her life as miserable as possible.

130. Upon information and belief, as a result of the defendants' actions and inactions detailed in paragraphs numbered "20" to "129"above, inclusive, Plaintiff has suffered extreme and severe emotional distress, mental anguish, loss of self-esteem and pain and suffering.

## COUNT I – TITLE VII EMPLOYMENT DISCRIMINATION BASED ON SEX

131. Plaintiff repeats and realleges paragraphs numbered "1" to "130" above, inclusive, as if set forth in full herein.

132. At all relevant times, defendants, NYPD, NYC and Commissioner employed in excess of five-hundred (500) employees, were and are engaged in an industry affecting commerce, were and are employers as defined by 42 U.S.C. §2000e et. seq.

133. At all relevant times, defendant, Briones, in his official capacity, was and is an agent of aneinployeiwithinthemeañiiof42U.S.C. §2000e et. seq.

134. Plaintiff was forced to endure discrimination, harassment, humiliation and retaliation because of her sex. This action violated 42 U.S.C. §2000e et. seq.

135. The effect of the practices complained of in paragraphs numbered "20" to "129" above, inclusive, above has been to deprive Plaintiff of equal employment opportunities.

136. Defendants Briones's, NYPD's NYC's and Commissioner's acts of discrimination against

Plaintiff were willful and intentional violations of Title VII, within the contemplation of 42 U.S.C. §2000e et. seq.

137. Defendants Briones's, NYPD's, NYC's and Commissioner's treatment of Plaintiff caused Plaintiff to suffer irreparable harm to her ability to pursue a career as a police officer, severe mental anguish, personal pain and suffering, loss of enjoyment of life, loss of a viable career with NYPD free from harassment and discrimination that prevents her from working in the School Unit at the 103rd Precinct, loss of a unique and rewarding career opportunity working in the School Unit at the 103rd Precinct, loss of wages, bonuses and benefits and other compensation which such employment entails, future pecuniary losses professional embarrassment and public humiliation in violation, and within the contemplation of 42.U,S.C §2000e . q., and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

WHEREFORE, plaintiff requests judgment on Count I of this lawsuit against defendants, Briones, .NYPD, NYC and Commissioner, jointly and severally, for back pay; front pay, lost benefits, lost pension funds, including re-judgment interest, liquidated damages, pecuniary and non-pecuniary compensatory damages, punitive damages, all in amounts to be determined at trial, costs of this lawsuit, reasonable attorney's fees, expungement of all improper adverse references from Plaintiff's records, restoration of Plaintiff to her former position as a School Unit officer or to a comparable position, and such other and further relief as this Court may deem just and proper.

## COUNT II – TITLE VII EMPLOYEMENT DISCRIMINATION –
## HOSTILE WORK ENVIRONMENT

138.   Plaintiff repeats and realleges paragraphs numbered "1" to "137" above, inclusive, as if set forth in full herein.

139.   Defendants Briones's, NYPD's, NYC's and Commissioner's conduct as alleging paragraphs numbered "20" to "129" above, inclusive, created a sexually hostile work environment for Plaintiff, Defendants NYPD's, NYC's and Commissioner's failure to take effective steps to stop this inappropriate behavior is a condonation, ratification, approval and perpetuation of the sexually hostile work environment at NYPD.

140.   The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities by forcing Plaintiff to endure sexual harassment.

141.   Defendants Briones's, NYPD's, NYC's and Commissioner's sexually-based harassment of Plaintiff were willful and intentional violations of Title VII, within the contemplation of 42 U.S.A. §2000e et. seq.

142.   Defendants Brione's, NYPD's, NYC's and Commissioner's sexually-based harassment of Plaintiff caused Plaintiff to suffer irreparable harm to her ability to pursue a career as a police officer, severe mental anguish, personal pain and suffering, loss of enjoyment of life, loss of a viable career with NYPD free from harassment and discrimination that prevents her from working in the School Unit at the I 03rd Precinct, loss of a unique and rewarding career opportunity working in the School Unit at the 103rd Precinct, loss of wages, bonuses and benefits and other compensation which such employment entails, future pecuniary humiliation in violation, and within the contemplation of 42 U.S.C. §2000e et. seq. and the Civil Rights Act of 1991, 42 U.S.C. §l981a.

WHEREFORE, plaintiff requests judgment on Count II of this lawsuit against defendants Briones, NYPD, NYC and Commissioner, jointly and severally, for back pay, front pay, lost

benefits, lost pension funds, including pre-judgment interest, liquidated damages, pecuniary and non-pecuniary compensatory damages, punitive damages, all in amounts to be determined at trial, costs of this lawsuit reasonable attorney's fees, expungement of all improper adverse references from Plaintiff's records, restoration of Plaintiff to her former position as a School Unit officer or to a comparable position, and such other and further relief as this Court may deem just and proper.

## COUNT III – TITLE VII EMPLOYMENT DISCRIMINATION - RETALIATION

143.    Plaintiff repeats and realleges paragraphs numbered '1' to "142" above, inclusive, as if set forth in full herein.

144.    Defendants Briones's, NYPD's, NYC's and Commissioner's conduct subsequent to - Plaintiff's complaints of discrimination and harassment, as alleged in paragraphs numbered "83" to "129" above, inclusive, constitutes separate acts of discriminatory retaliation against Plaintiff.

145.    The effect of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities by forcing Plaintiff to suffer retaliation for complaining about violations of her civil rights.

146.    Defendants Briones's, NYPD's; NYC's and Commissioner's acts of discriminatory retaliation against Plaintiff were willful and intentional acts in violation of Title VII, within the contemplation of 42 U.S.C. §2000e et. seq.

147.    Defendants Brione's, NYPD's, NYC's and Commissioner's discriminatory retaliation against Plaintiff caused Plaintiff severe mental anguish, personal pain and suffering, loss of enjoyment of life, loss of a viable career with NYPD free from harassment that prevents her from working in the School Unit at the 103rd Precinct, loss of unique and rewarding career

opportunity working in the School Unit at the 103rd Precinct, loss of wages, bonuses and benefits and other compensation which such employment entails, Mute pecuniary losses, professional embarrassment and public humiliation in violation, and within the contemplation of 42 U.S.C. §2000e et. seq. and the Civil Rights Act of 1991.

WHEREFORE, plaintiff requests judgment on Count III of this lawsuit against defendants, Briones, NYPD, NYC and Commissioner, jointly and severally, for back pay, front pay, lost benefits, and intimidating tactics aimed at inducing Plaintiff to discontinue, or ultimately terminate, her employment functions within the School Unit of the lO3 Precinct of the NYPD.

148.   Defendants, NYPD, NYC, Commissioner and Briones, committed the acts alleged in paragraphs numbered "20" to "147" above, inclusive, with sexually-based animus depriving Plaintiff, on the basis of her sex, of the fill and equal employment and benefit of the law, and privileges and advantages there under, as are enjoyed by male citizens, including the right to make and enforce - contracts and to have an interest in protection of her property interests free from violation of her constitutional and statutory rights as secured and set forth in the Fourteenth Amendment of the United States Constitution and the provisions of 42 U.S.C. §1983.

149. Defendants Briones's, NYPD's, NYC's and Commissioner's, NYPD's conduct, as alleged in paragraphs numbered "20" to "147" above, inclusive, were willful and intentional violations of Plaintiffs equal protection and due process rights guaranteed under the united States Constitution and within the contemplation of 42 U.S.C. § 1983.

150.   Defendants Briones's, NYPD's, NYC's and Commissioner's conduct, as alleged in paragraphs numbered '20" to "147' above, inclusive, caused Plaintiff severe mental anguish, personal pain and suffering, loss of enjoyment of life, loss of a viable career with NYPD free

from harassment that prevents her from working in the School Unit at the 103rd Precinct, loss of unique and rewarding career opportunity working in the School Unit at the 103rd Precinct, loss of wages, bonuses and benefits and other compensation which such employment entails, future pecuniary losses, professional embarrassment and public humiliation.

WHEREFORE, Plaintiff requests judgment on Count IV of this lawsuit against defendants, Briones, NYPD, NYC and Commissioner, jointly and severally, for back pay, front pay, lost benefits, lost pension finds, including pie-judgment interest, liquidated damages, pecuniary and non - pecuniary compensatory damages, punitive damages, all in amounts to be determined at trial; costs of this lawsuit, reasonable attorney's fees, expungement of all improper adverse references from Plaintiff's records, restoration of Plaintiff to her former position as a School Unit officer or to a comparable position, and such other and further relief as this Court may deem just and proper.

## COUNT V – DISCRIMINATION UNDER N.Y.S EXECUTIVE
## LAW ARTICLE 15 AND N.Y.S. CIVIL RIGHTS LAW §§40-c and 40-d

151.    Plaintiff repeats and realleges paragraphs numbered "1" to "150" above, inclusive, set forth in hill herein.

152.    Defendants Briones's, NYPD's, NYC's and Commissioner's official and personal/individual acts, as alleed in paragraph numbered "1" to"150" above, were willful and intentional violations of Plaintiffs equal protection and due process rights guaranteed under the New York State Constitution,

153.    Defendants Briones's, NYPD's, NYC's and Commissioner's official and personal/individual acts, as alleged in paragraphs numbered "1" to "150" above, were unlawful

discriminatory practices under New York State's Executive Law, Exec.L. §296.

154.   Defendants Briones's, NYPD's, NYC's and Commissioner's official and personal/individual acts, as alleged in paragraphs numbered "1" to "150" above, subjected Plaintiff to discrimination in her civil rights in violation of New York State's Civil Rights Law, Civ. R.L. §40-c.

155.   Defendants Briones's, NYPD's, NYC's and Commissioner's sexually-based harassment, discrimination mid retaliation against Plaintiff, caused Plaintiff to suffer irreparable harm to her ability to pursue a career as a police officer, sever mental anguish, personal pain and suffering, loss of enjoyment of life, loss of a viable career with NYPD free from harassment and discrimination that prevents, her from working in the School Unit at the 103rd Precinct, loss of unique and rewarding career opportunity working in the School Unit at the 103rd Precinct loss of wages, bonuses and benefits and other compensation which such employment entails, fixture pecuniary losses, professional embarrassment and public humiliation in violation, and within the contemplation of N:Y.S. Exec.L. §296 and N.Y.S.Civ. R.L. §40-c and 40-d.

156.   Defendant Briones's, NYPD's, NYC's and Commissioner's acts as alleged in paragraphs numbered '1" to "150" above, inclusive, were unlawful discriminatory practices under New York State's Executive Law, Exec.L. §296, that aided, abetted; incited compelled and/or coerced performance of forbidden acts under New York State's Executive Law, Exec.L. §296.

157.   Defendants Briones's, NYPD's, NYC's and Commissioner's acts, as alleged in paragraphs numbered "1" to "150" above, inclusive, subjected Plaintiff to discrimination of her civil rights in violation of New York State's Civil Rights Law, Civ. R.L. §40-c, in that they aided and/or incited violation of New York State's Civil Rights Law, Civ. ILL. §40-c, in violation of

New York State's Civil Rights Law, Civ. RI. §40-d.

158.     Defendants Briones, NYPD's, NYC's and Commissioner's acts, as alleged in paragraphs numbered "1" to "150" above, inclusive, caused Plaintiff to suffer irreparable harm to her ability to pursue a career as a police officer, severe mental anguish, personal pain and suffering, loss of enjoyment of life, loss of a viable career with NYPD free from harassment and prevents her from working in the School Unit at the 103rd Precinct, loss of a viable and rewarding career opportunity working in the School Unit at the l03 Precinct, loss of wages, bonuses and benefits and other compensation which such employment entails, future pecuniary losses; professional embarrassment and public humiliation in violation, and within the contemplation of N.Y.S. Exec.

WHEREFORE, Plaintiff requests judgment on Count V of this lawsuit against defendants Briones, NYPD, NYC and Commissioner, jointly and severally, for back pay, front pay, lost benefits, lost pension -funds, including pre-judgment interest, liquidated damages, pecuniary and non-pecuniary compensatory damages, punitive damages, all in amounts to be determined at trial, costs bf this lawsuit - reasonable attorney's fees, statutory penalties, expungement of all improper adverse references from Plaintiff's records, restoration of Plaintiff to her former position as a School Unit officer or to a comparable position, and such other and further relief as this Court may deem just and proper.

## COUNT VI – UNLAWFUL DISCRIMINATORY PRATICE UNDER
## NEW YORK CITY ADMINSTRATIVE CODE TITLE 8 (§8-502)

159.     Plaintiff repeats and realleges-paragraphs numbered "1" to"158" above, inclusive,

31

as if set forth in full herein.

160.    Defendants Briones's, NYPD's, NYC's and Commissioner's official and Personal/individual acts, as alleged in paragraph numbered "1" to "158" above, subjected Plaintiff to sexually-based harassment, discrimination and discriminatory retaliation. This action violated N.Y.C. Admin. Code Title 8 et. seq.

161.    Defendants Briones's, NYPD's, NYC's and Commissioner's failure to-take effective steps to terminate the inappropriate behavior as alleged herein, is a condonation, ratification, approval and perpetuation of sexually-based harassment, discrimination and discriminatory retaliation Plaintiff was forced to endure at NYPD.

162.    The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities, equal protection and due process by forcing Plaintiff to endure sexually- based harassment, discrimination and discriminatory retaliation.

163.    Defendants Briones's NYPD's, NYC's and Commissioner's sexually-based harassment, discrimination and discriminatory retaliation of Plaintiff were willful and intentional violations and within the contemplation of N.Y.C. Admin. Code Title 8 et. seq.

164.    Defendants Briones's, NYPD's, NYC's and Commissioner's sexually-based harassment, discrimination and discriminatory retaliation of Plaintiff, caused Plaintiff to suffer irreparable harm to her ability to pursue a career as a police officer; severe mental anguish, personal pain and suffering, loss of enjoyment of life, loss of a viable career with NYPD free from harassment and discrimination that prevents her from working in the School Unit at the 103rd Precinct, loss of unique and rewarding career opportunity working in the School unit at the 103rd  Precinct, loss of wages, bonuses and benefits and other compensation which such employment entail, future pecuniary losses, professional embarrassment and public humiliation

in violation, and within the contemplation of N.Y.C. Admin. Cede Title 8 et. seq.

165.    Defendants Briones's, NYPD's, NYC's and Commissioner's acts, as alleged in paragraphs numbered "1" to "164" above, inclusive, were unlawful discriminatory practices under N.Y.C. Admin. Code Title 8 et. seq., that aided, abetted, incited, compelled and/or coerced performance of forbidden acts under N.Y.C. Admin. Code Title 8 et. seq.

166.    Defendants Briones's, NYPD's, NYC's and Commissioner's acts as alleged in paragraph numbered "1" to "164" above, inclusive, caused plaintiff to suffer irreparable harm to her ability to pursue a career as a police officer, severe mental anguish, personal pain and suffering, loss of enjoyment of life, loss of a viable career with NYPD free from harassment and discrimination that prevents her from working in the School Unit at the 103" Precinct, loss of unique and rewarding career opportunity working in the School Unit at the l03 Precinct, loss of wages, bonuses and benefits and other compensation which such employment entails, future pecuniary losses, professional embarrassment and public humiliation in violation, and within the contemplation of N.Y.C. Admin. Code 8 et. seq.

167.    Copies of this complaint will be served upon the City Commission on Human Rights and the Corporation Counsel of the City of New York in compliance with the requirements of N.Y.C. Admin. Code §8-502 (c).

WHEREFORE, Plaintiff requests judgment on Count VI of this lawsuit against defendants, Briones, NYPD, NYC and Commissioner jointly and severally, for back pay, front pay, lost benefits, lost pension funds, including pre-judgment interest, liquidated damages, pecuniary and non-pecuniary damages, punitive damages, all in amounts to be determined at trial, costs of this lawsuit, reasonable attorney's fees, statutory penalties, expungement of all improper adverse references from Plaintiff's records, restoration of Plaintiff to her former

position as a School Unit officer or to a comparable position, and such other and further relief as this Court may deem just and proper.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

168.   Plaintiff repeats and realleges paragraphs numbered "1" to "167" above, inclusive, as if set forth in full herein.

169.   Defendants Briones, NYPD, NYC and Commissioner are and were aware that Plaintiff was extremely uncomfortable with Briones's sexual behavior and sexual comments and was completely demeaned by hi lewd and obscene actions and language.

170.   Defendants NYPD, NYC and Commissioner were put on notice by Plaintiff that she wanted Briones to stop his harassing, discriminatory and demeaning behavior.

171.   With full knowledge of the facts alleged in paragraphs numbered "1" to "170" above, inclusive, l3riones, in his position of power and control over plaintiff, set out on a willful, malicious, extreme and outrageous course of action to intentionally cause Plaintiff severe emotional distress.

172.   The course of action alleged in paragraph numbered "1" to "170" above, included without limitation continued sexual harassment, obscene statements and actions and unreasonable interference with Plaintiff's ability to perform her duties and responsibilities within the School Unit of the 1 03 Precinct including but not limited to the direction and management of the Youth Program.

173.   As a direct and proximate result of this extreme and outrageous conduct, Plaintiff suffered from extreme emotional distress that no reasonable woman should be made to endure.

34

WHEREFORE, Plaintiff requests judgment on Count VII of this lawsuit against defendants, for compensatory damages, punitive damages, all in amounts to be proven at trial, costs of this lawsuit, reasonable attorney's fees, and such other and farther relief as this Court may deem just and proper.

## COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

174.    Plaintiff repeats and realleges paragraphs numbered "1" to "173" above, inclusive, as if set forth in full herein.

175.    Defendants Briones, NYPO, NYC and Commissioner owed a separate duty to Plaintiff to prevent defendant Briones from committing acts that inflicted emotional distress upon Plaintiff.

176.    Defendants NYPD, NYC and Commissioner breached their duty to Plaintiff by failing to prevent Briones from-inflicting emotional distress upon Plaintiff.

177.    As a direct and proximate result of defendants NYPD's, NYC's and Commissioner's breach of their duty to Plaintiff, she suffered from extreme emotional distress that no reasonable woman should be made to endure.

WHEREFORE, Plaintiff requests judgment on Count VIII of this lawsuit against defen4ants for compensatory damages, punitive damages, all in amounts to be proven at trial, costs of this lawsuit, reasonable attorney's fees, and such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all the triable issues raised in this complaint.

Dated:

        Lake Success, N.Y.
        November 4, 2010

By: _____

        Jeffrey L. Goldberg (JG9623)
        Jeffrey L. Goldberg, P.C.
        Attorneys for Plaintiff
        2001 Marcus Avenue, Suite S160
        Lake Success, New York 11042
        516-775-9400 (Business Phone)
        516-775-4477 (Facsimile)